UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GORDIE TAYLOR,<br><br>      Plaintiff,<br><br>      v.<br><br>VILLAGE OF DOLTON, ILLINOIS, et al.,<br><br>      Defendants. | No. 14 CV 1402<br><br>Judge Manish S. Shah |

## ORDER

Defendants Village of Dolton, Terry Hughes, Daniel Manning, and David Duvall's motion to dismiss [18] is granted in part, and denied in part as moot, and their motion for a more definite statement [16] is denied as moot. Defendant International Association of Firefighters Local 3766's motion to dismiss [21] is granted in part, and denied in part as moot, and its motion for a more definite statement [24] is denied as moot. Counts I and II are dismissed without prejudice.

## STATEMENT

Plaintiff Gordie Taylor has brought suit against his former employer, supervisors, and union, alleging violations of state and federal law in connection with his termination from the Dolton Fire Department. All defendants have moved to dismiss Count I (due process - property interest), Count II (due process - liberty interest), and Count IV (violation of 29 U.S.C. § 185). Dolton has additionally moved to dismiss Count V (defamation). After defendants filed their motions, plaintiff clarified that he does not bring Counts I and II against the union, or Count V against Dolton. [31] at 7 n.1. Plaintiff has also withdrawn Count IV in its entirety. [32] at 1. As a result, all that remains before me is the Dolton defendants' Rule 12(b)(6) motion to dismiss Counts I and II for failure to state a claim.

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). In reviewing the sufficiency of a complaint,

I accept the well-pleaded facts as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013).

According to plaintiff's complaint, he started as a firefighter in the Dolton Fire Department in September 2009. [1] ¶ 15. In 2010, defendants Duvall and Manning began directing racially offensive comments and conduct toward him. *Id*. ¶ 17. Although he complained to Jerry McCullough, Chief of the Dolton Fire Department, nothing was done to address the problem. *Id*. ¶ 19. Likewise, when plaintiff complained about the racism to the defendant union, it refused to help. *Id*. ¶ 20.

In January 2013, Duvall, who was both plaintiff's supervisor and the president of plaintiff's union, falsely accused plaintiff of drinking on the job. *Id*. ¶¶ 9, 22. This was the last straw for plaintiff—having endured racial discrimination, having had his complaints ignored, and, now, having been falsely accused of misconduct, plaintiff decided to report the discrimination to the Equal Employment Opportunity Commission. *Id*. ¶ 23.

In March 2013, Manning, who was plaintiff's supervisor as well, retaliated against plaintiff for having gone to the EEOC. *Id*. ¶ 24. He too falsely accused plaintiff of drinking on the job. *Id*. Manning told plaintiff he would either be suspended for three days, or have to go before the Board of Police and Fire Commissioners for disciplinary action. *Id*. Plaintiff filed another charge with the EEOC, this time for racial discrimination and retaliation. *Id*. ¶ 25.[1]

In September 2013, based on the false allegations of drinking on the job, Duvall presented plaintiff with a "last chance agreement" under which plaintiff would be subjected to discipline that could not be grieved. *Id*. ¶ 26. The agreement further provided that, if plaintiff violated any rule or regulation in the future, he would be immediately discharged with no grievance right. *Id*. Duvall told plaintiff that if he did not sign the agreement, he would be brought before the Board of Police and Fire Commissioners for discharge proceedings. *Id*. Finally, Duvall stated that the union would not grieve the last chance agreement, nor would it represent plaintiff in any way if he refused to sign the document. *Id*. Plaintiff refused to sign the agreement and was sent home on administrative leave. *Id*.

When plaintiff returned to work a week or so later, Hughes presented him with another last chance agreement and said he would be discharged unless he signed it. *Id*. ¶ 28. Again refusing to sign, plaintiff contacted Duvall to ask that the union represent him in the matter. *Id*. ¶ 29. Duvall told plaintiff the union would not assist him in any way. *Id*.

---

[1] It is unclear from the complaint whether plaintiff filed one or two charges with the EEOC.

Hughes discharged plaintiff on October 10, 2013. *Id.* ¶ 30. On November 6, 2013, plaintiff again contacted the union and asked it to grieve his discharge. *Id.* ¶ 31. The union did not respond or take any action on his behalf. *Id.*

Plaintiff filed a nine-count complaint against the Dolton defendants and the union, alleging violations of his due process rights, Title VII, and the National Labor Relations Act (29 U.S.C. § 185), as well as state law claims for defamation, tortious interference, intentional infliction of emotional distress, and civil conspiracy. All defendants moved to dismiss a number of counts, but, as already noted, only Counts I and II—as brought against the Dolton defendants—are presently at issue.

*Count I –Due Process (Property Interest)*

In Count I, plaintiff alleges the Dolton defendants deprived him of his employment without due process of law. To state this claim, which is brought under 42 U.S.C. § 1983, plaintiff must allege that he was deprived of a property interest under color of state law without due process. *Chaney v. Suburban Bus Division of the Regional Transportation Authority,* 52 F.3d 623, 627 (7th Cir. 1995). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). An action is taken under color of state law if it involves a "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *National Collegiate Athletic Associaiton v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation omitted).

The Dolton defendants say Count I should be dismissed "because it appears that constitutionally adequate procedures were available to Plaintiff by way of the [Collective Bargaining Agreement's] grievance-arbitration provisions." [20] at 3.[2] Due process may be satisfied by collectively bargained grievance and arbitration procedures. *Chaney,* 52 F.3d at 627 ("We have held, and other circuits agree, that grievance procedures created by collective bargaining agreements can satisfy the requirement of due process.") (quotation omitted). Plaintiff does not argue that the available procedures fell below what due process requires. Instead, he argues that a Dolton supervisor, Duvall, denied him access to these procedures, and so Dolton should be held liable for plaintiff's inability to use them.

---

[2] The Dolton defendants do not contest that plaintiff has alleged a cognizable property interest as well as a deprivation of that interest.

3

A review of the Collective Bargaining Agreement [3] demonstrates that plaintiff's theory of liability fails as a matter of law. Under the Agreement, all disciplinary action resulting in a suspension or discharge is subjected to the Agreement's grievance procedure, which consists of five steps. [30-1] at 23. First, the employee (by himself or with a union officer) has a discussion with his immediate supervisor. *Id.* at 18. If that does not resolve the issue, the employee (or a union officer) submits a formal written grievance to the Chief for his decision. *Id.* Should that not take care of the problem either, the employee (or union officer) next has the right to appeal the Chief's decision to the Village Administrator, whose decision can itself be appealed to the Village Trustee. *Id.* at 18-19. Finally, if the Village Trustee is unable to resolve the issue to the employee's liking, the union has the authority to initiate binding arbitration proceedings against the Village on the employee's behalf. *Id.* at 19-21.

As these provisions demonstrate, the employer has no say over an employee's ability to grieve a complaint. In steps one through four, the employee has all the power to go it alone. He can be heard by an office as high as the Village Trustee without any participation from either the union or his employer. This changes, of course, with step five, in which the union's participation is required before the employee's arbitration case can begin. Nevertheless, the employer's willingness remains neither a sufficient nor necessary condition for the employee to have access to arbitration. The employer simply has no power to serve as gatekeeper at any point in the grievance process.

Plaintiff alleges that at all times Duvall was acting as both a Dolton supervisor and the union president. That may be true, but Duvall's differing roles came with differing authority. Duvall-the-supervisor's refusal to help plaintiff grieve his complaints had no legal significance because employers are not grievance gatekeepers under the Agreement. At the same time, Duvall-the-union-president unquestionably had the authority to help, initiate, or prosecute plaintiff's grievance, including by commencing arbitration.

A state body cannot be held liable when it makes procedural protections available but an employee and his union fail to use them. *Hudson v. City of Chicago*, 374 F.3d 554, 563-64 (7th Cir. 2004). Plaintiff may have a claim against the union for breach of its duty to fairly represent his interests, but Dolton "should not be blamed for the mistakes of the Union." *Id.*

---

[3] Although the Agreement was not attached to plaintiff's complaint, I can consider it at this stage because the complaint references and discusses it. *Craig v. Rich Township High School District 227*, 736 F.3d 1110, 1113 n.1 (7th Cir. 2013).

4

Plaintiff has not alleged that anyone acting under color of law deprived him of post-termination due process.[4] Therefore, the Dolton defendants' motion is granted as to Count I.

*Count II –Due Process (Liberty Interest)*

In Count II, plaintiff alleges the Dolton defendants deprived him of his liberty interest without due process by falsely and publicly accusing him of drinking on the job. To state a liberty interest claim, a plaintiff must allege that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure. *Covell v. Menkis*, 595 F.3d 673, 677-78 (7th Cir. 2010). "A plaintiff must [allege] that a named defendant was the individual who made the disclosure . . . ." *Id*.

The Dolton defendants argue that Count II fails to state a claim because there are no allegations that anyone publicly disclosed stigmatizing information. Plaintiff disagrees and argues that paragraphs 24, 26, 28, 50, and 51 accomplish just that. [31] at 7. The first three of these paragraphs involve one-on-one conversations between plaintiff and his supervisors. [1] ¶¶ 24, 26, 28. Paragraph 51 alleges only that plaintiff lost valuable job opportunities. *Id*. ¶ 51. Paragraph 50 states: "Defendants' discharge of [plaintiff], and the public comments that falsely accused [plaintiff] of misconduct in the performance of his official duties, stigmatized [plaintiff's] reputation and deprived him of his right to continued employment with Dolton." *Id*. ¶ 50. Thus, only paragraph 50 alleges any public disclosure at all, but it does so without identifying which named defendant made the public disclosure. *See Covell*, 595 F.3d at 678 ("[A] plaintiff must prove that a defendant disseminated the stigmatizing information to the public. This court cannot find any evidence that any individual Defendant disseminated the stigmatizing information to the public.")

---

[4] The parties focus almost all of their attention on issues of post-discipline due process. *But see* [33] at 6 n.3. However, I find it apparent that plaintiff has also failed to plead a violation of his pre-discipline due process rights. Where an employee has a full opportunity to contest his firing in a post-termination hearing, before his termination he is entitled only to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Plaintiff's complaint alleges that he was given notice before his suspension and termination. [1] ¶¶ 26-28. Plaintiff knew of the evidence underlying the discipline (i.e., Duvall's and Manning's accusations). *Id*. ¶¶ 22, 24. And plaintiff was told he could go before the Board of Police and Fire Commissioners. *Id*. ¶¶ 24, 26. In light of the ample post-deprivation procedures in place, these allegations of pre-discipline procedures demonstrate that plaintiff was not denied due process in this regard either. *Loudermill*, 470 U.S. at 546.

5

Plaintiff's complaint does not provide enough information about the circumstances of the public disclosure to allow any defendant to mount a defense.

The Dolton defendants' motion is granted as to Count II. Counts I and II are dismissed without prejudice. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (district courts routinely dismiss the plaintiff's complaint without prejudice).

ENTER:

Date: 12/9/14

Manish S. Shah
U.S. District Judge